## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARIO JACKSON,

     *Plaintiff*,

*v.*                      CASE NO. 12-CV-15036

COMMISSIONER OF          DISTRICT JUDGE JULIAN ABELE COOK
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

_____

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 15.)

Plaintiff Mario Jackson was 29 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 32, 159.) Plaintiff's employment history includes work as a line handler for seven years and as a material handler for one year. (Tr. at 217.) Plaintiff filed the instant claims on March 19 and 20, 2009, alleging that he became unable to work on July 1, 2002. (Tr. at 159, 163.) The claims were denied at the initial administrative stage. (Tr. at 50-51.) In denying Plaintiff's claims, the Commissioner considered attention deficit hyperactivity disorder ("ADHD") and back pain as possible bases for disability. (*Id.*) On October 7, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Jerome B. Blum, who considered the application for benefits *de novo*. (Tr. at 13-30, 32-49.) In a decision dated November 4, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) Plaintiff requested a review of this decision on January 4, 2011. (Tr. at 12.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on September 20, 2012, after review of additional exhibits[2] (Tr. at 365-74), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On November 14, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

### B.      Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the

ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through June 30, 2013, and had engaged in substantial gainful activity at various times throughout the relevant period but that there were continuous 12-month periods during which Plaintiff did not engage in substantial gainful activity. (Tr. at 18-19.) At step two, the ALJ found that Plaintiff's back pain, depression, ADHD, post-traumatic stress disorder ("PTSD"), and bipolar disorder were "severe" within the meaning of the second sequential step. (Tr. at 19.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19-21.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 24-25.) The ALJ also found that Plaintiff was 21 years old on the alleged disability onset date and thus met the classification of a younger individual, i.e., between the ages of 18 and 49. (Tr. at 25.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 21-24.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 26.)

### E.    Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff became eligible for special education services in 1999 when he was 18 years old, including vocational education. (Tr. at 189.) Eligibility was based on an assessment done by Kenneth Brush, M.A., School Psychologist, in September 1999, which found that Plaintiff's "general ability or effective level of functioning falls with the Low Average range[,]" and that his Verbal IQ was 81, his Performance IQ was 86, and his Full Scale IQ was 82. (Tr. at 198.) The assessment also noted that Plaintiff had been provided with "Special Education Programs or

Services for 9+ years" as an emotionally impaired individual. (Tr. at 198, 203.) Mr. Brush concluded:

> Current test results indicate functioning within the Low Average range of measured ability, with indications of true ability within the Average range. However, achievement testing reveals academic abilities significantly lower, in the low Borderline to Moderately impaired range, in reading, decoding, spelling, math computation and reading comprehension. Although some emotional features appear to be present, a Learning disability continues to appear to be his primary area of disability.

(Tr. at 199-200.)

> The school social worker, Diane Courtney, indicated in November 1999, that Plaintiff
>
> talked freely about his life . . . . For the most part, the general theme was his dislike of others telling him what to do. He seemed aware of his feelings, and clearly recognized how his feelings were affecting his behavior. Mario has trouble accepting limits and consequences in both the home/school environment, and can be a very disruptive presence in either settings.

(Tr. at 201.) Ms. Courtney noted that Plaintiff's older brother and uncle "believe that Mario is capable of controlling his behavior and manipulates situations. Family members agreed that Mario is immature and self-centered and infantile in his demands on other people. When his demands are not met, he becomes angry and resentful." (Tr. at 203.) Ms. Courtney stated that Plaintiff did not qualify for certification as emotionally impaired because Plaintiff "does not exhibit inappropriate behavior with no apparent cause or reason without any ability to modify it when so directed." (*Id*.) "Mario demonstrates the ability to build and maintain peer/adult relationships. Mario does admit to some negative interactions with teachers [], but this appear[s] more related to his perception that they are trying to control him." (*Id.*)

Plaintiff was treated by Terry Scott Baul, M.D., from 2003 to 2009. (Tr. at 270-95.)

On May 14, 2009, Plaintiff underwent a consultative examination with Julie Czarnecki, M.S., L.L.P., and Nick Boneff, Ph.D. (Tr. at 264-69.) It was noted that Plaintiff "denies any drug

or alcohol use, but was arrested once and is now on probation for drug sales." (Tr. at 265.) Records also show Plaintiff was arrested on two other occasions. (Tr. at 348.) It was also noted that Plaintiff was alert and oriented times three, his mental activity was organized and logical, his affect was "mildly constricted and his mood was generally, pleasant, relaxed and no evidence of major depression or anxiety." (Tr. at 265.)  After testing, it was concluded that Plaintiff "is capable of functioning in the solidly borderline range and does not evidence any significant impairments of concentration, attention, or short term, working memory that would interfere with his ability to do simple routine manual labor tasks." (Tr. at 267.) "There is no evidence of psychiatric illness, depression, and anxiety that would adversely affect his ability to appropriately interact in a social or work environment at this time." (*Id.*) Plaintiff was diagnosed with ADHD, which is "relatively well managed with medication" and depression (NOS) "by history, and a GAF score of 60-65 was assessed." (*Id.*)

A Mental RFC Assessment was completed by Kenneth Kobes on June 16, 2009. (Tr. at 296-98.) Plaintiff was found to be markedly limited in the ability to understand, remember, and carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, but was not significantly limited in any other areas of understanding and memory, sustained concentration or persistence. (Tr. at 296-97.) Plaintiff was found to be moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors, but was otherwise not significantly limited in social interaction and adaptation. (Tr. at 297.) The assessment concluded that Plaintiff

> has the ability to understand, retain, recall, and carryout most simple instructions; with medication, he is able to pay attention to and concentrate on simple tasks and complete them timely in an appropriate and productive manner. He is willing to accept supervision; he could get along with peers if close proximity is not forced.

He would not do well in frequent dealings with the public. He is able to exercise reasonable judgment and appropriate decision making in adapting to changes that occur in the simple work-site.

(Tr. at 298.)

A Psychiatric Review Technique was completed by Kenneth Kobes on June 16, 2009. (Tr. at 299-311.) Plaintiff was diagnosed with organic mental disorder, i.e., cognitive disorder (NOS) with borderline intellectual functioning, and affective disorder, i.e., depression, by history. (Tr. at 299-302.) Plaintiff was found to be moderately limited in maintaining concentration, persistence or pace, and mildly limited in activities of daily living and in maintaining social functioning. (Tr. at 309.)

Plaintiff underwent a consultative examination with Cynthia Shelby-Lane, M.D., on June 19, 2009. (Tr. at 312-21.) Dr. Shelby-Lane concluded that Plaintiff "should avoid heavy lifting or repetitive use and repetitive heavy lifting." (Tr. at 314.)

A Physical RFC Assessment was completed by Janet Herrington on July 6, 2009. (Tr. at 322-29.) The assessment concluded that Plaintiff is able to occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and was unlimited in his ability to push and pull. (Tr. at 323.) It was found that Plaintiff could frequently balance and occasionally perform all the other postural tasks. (Tr. at 324.) There were no manipulative, visual, communicative, or environmental limitations established, except that Plaintiff should avoid concentrated exposure to extreme cold. (Tr. at 324-26.)

Plaintiff was treated at the New Oakland Child Adolescent and Family Center from August 2009 through June 2010. (Tr. at 330-64.) On June 17, 2010, Wendy Hayek, M.A., L.L.P., wrote a letter indicating that Plaintiff was treated in the "Face to Face" program and was then referred

to her for treatment. Ms. Hayek noted that during the Face to Face treatment, it was recommended that Plaintiff not enter the workforce and she opined that "[a]t this time it is further recommended that [Plaintiff] does not seek employment." (Tr. at 364.)

In his Daily Function report, Plaintiff indicated that he is able to "go and look for work" on a daily basis, that he does not need reminders, that his prepares his own meals on a daily basis (including sandwiches, steaks and hot dogs), that he is able to clean floors, the bathroom, and the living room for two and one-half hours once a week, that he is able to wash dishes, go outside "everyday[,]" walk, use public transportation, drive, shop in stores for an hour or two, play sports, watch television, play chess, and go over to his friend's houses. (Tr. at 239-43.)

At the administrative hearing, Plaintiff testified that he has PTSD from "seeing a lot of people getting killed[,]" including his mother and "a lot of my cousins." (Tr. at 37.) Plaintiff indicated, "I attend [group] therapy, like three or four times a week and I see the psychiatrist every three months." (Tr. at 38, 39.) Plaintiff stated that his medications make him "feel drowsy, lazy." (Tr. at 38.) Plaintiff testified that he lives with his aunt and that she

> cooks my breakfast. I sit down, watch a little TV, just play a game. She asks me to take out the trash, I'll do that and nothing else. I don't go outside because I feel like I want to fight all the time or hurt somebody. The only thing I do is just take care of – my showering and get dressed. She do everything else.

(Tr. at 39.) When asked whether he gets along with his aunt, Plaintiff responded, "Not all the time. I'll snap at her for no reason." (*Id.*) Plaintiff indicated that he had been taking medicine for ADHD when he was a child and in the custody of his parents and later, in the custody of his grandmother. (Tr. at 40.) Plaintiff stated that "the stuff that happened in the past, is coming up now. And it seems like it's a trigger in my system. . . . I can get better, I can do better, but not right now." (Tr. at 41.)

Plaintiff's aunt testified that Plaintiff was fired from previous jobs because "he got in too many arguments on the job" with his "employers [and his] managers." (Tr. at 43.) Plaintiff's aunt

indicated that Plaintiff "has mood swings, he screams, he hollers all the time. When he plays that Xbox, he's just out of control." (Tr. at 43.) When asked whether Plaintiff could take care of himself, Plaintiff's aunt responded, "No, he's not responsible. Mario has a list of bills this long that are unpaid, that I have to keep track of. And it's ridiculous." (Tr. at 44-45.)

At the administrative hearing, the ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background who could perform unskilled, "simple work, one-two step work," at the light exertional level where he would lift "under 20 pounds" and would "have very little, if any, public contact[.]" (Tr. at 46.) The VE responded that such a person could not perform Plaintiff's past work but could perform the 25,000 bench assembly and inspection jobs available in Southeastern Michigan. (Tr. at 47.) When asked by the ALJ, the VE confirmed that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 48.)

**F.      Analysis and Conclusions**

**1.      Legal Standards**

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 21-24.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.      Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "ALJ erred in concluding that the claimant's severe medical problems, either alone or in combination, do not medically meet or equal a Listed Impairment[,]" i.e, Listing 12.02, 12.042, 12.06 or 12.08. (Doc. 12 at 17-21.) Plaintiff argues that the ALJ mischaracterized Plaintiff's activities of daily living, which resulted in an erroneous finding that Plaintiff only had moderate restrictions in social functioning (*id*. at 23), and that the "ALJ also lacked substantial evidence to reject the opinion of Mario's psychologist, Wendy Hayek, M.A., L.L.P, from New Oakland Child-Adolescent and Family Center." (*Id*. at 23-25.) Finally, Plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment was not supported by substantial evidence. (*Id*. at 25-26.)

### a.      Listing 12.02

Plaintiff contends that the "ALJ erred in concluding that the claimant's severe medical problems, either alone or in combination, do not medically meet or equal a Listed Impairment[,]" i.e, Listing 12.02, 12.042, 12.06 or 12.08. (*Id*. at 17-21.) The ALJ found that the "B" criteria could

not be met in any of the Listings and Plaintiff disagrees. The ALJ in the instant case found that Plaintiff had a mild restriction in his activities of daily living, a moderate restriction in social functioning, and a moderate restriction in maintaining concentration, persistence or pace. (Tr. at 20.)

A plaintiff's impairment must match all the specified medical criteria in order to show the impairment meets a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of his unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S. at 531. "The B criteria [] are satisfied by a showing of at least two of the following functional limitations: 1) a marked restriction of activities of daily living, 2) marked difficulties in maintaining social functioning, 3) marked difficulties in maintaining concentration, persistence, or pace, or 4) repeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and move on to steps four and five. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). In *Rabbers*, the Sixth Circuit held that the plaintiff's bipolar disorder did not seriously interfere with his ability to function on a daily basis where his daily activities were self-described as watching television, visiting a soup kitchen, doing some household chores and attending NA or AA meetings. *Id.* at 658.

I suggest that Plaintiff's self-described daily activities show only mild restrictions and even more functioning than the plaintiff in *Rabbers*. Plaintiff indicated in his activity report that he is able to "go and look for work" on a daily basis, that he does not need reminders, that his prepares

14

his own meals on a daily basis (including sandwiches, steaks and hot dogs), that he is able to clean floors, the bathroom, and the living room for two and one-half hours once a week, that he is able to do dishes, goes outside "everyday[,]" is able to walk, use public transportation, drive, shop in stores for an hour or two, play sports, watch television, play chess, and go over to his friend's houses. (Tr. at 239-43.) I therefore suggest that the ALJ properly determined that Plaintiff has not shown that his mental impairments markedly restrict his daily activities. (Tr. at 20.)

As to social functioning, the Court in *Rabbers* held that where the plaintiff had anger management problems and was not a "people person," but got along with most of his family, the evidence did not show that his disorder interfered with his ability to maintain social functioning. *Rabbers*, 582 F.3d at 659. I suggest that the same is true in the instant case. Plaintiff's psychiatric evaluator found that Plaintiff "is capable of functioning in the solidly borderline range and does not evidence any significant impairments of concentration, attention, or short term, working memory that would interfere with his ability to do simple routine manual labor tasks." (Tr. at 267.) Furthermore, "[t]here is no evidence of psychiatric illness, depression, and anxiety that would adversely affect his ability to appropriately interact in a social or work environment at this time." (*Id*.) In addition, the Psychiatric Review Technique concluded that Plaintiff was only mildly limited in activities of daily living and in maintaining social functioning (Tr. at 309), and the Mental RFC Assessment and consultative examiner found that Plaintiff was not limited in the social area at all. (Tr. at 267, 297.)

In addition, there is no evidence in the instant case that Plaintiff suffers marked difficulties in concentration, persistence or pace; instead, the evidence agrees with the ALJ's conclusion that Plaintiff has, at most, moderate difficulties with regard to concentration, persistence or pace. (Tr. at 20.) The Mental RFC Assessment and the Psychiatric Review Technique concluded that Plaintiff

is moderately limited in concentration, persistence or pace. (Tr. at 296-97, 309.) However, the consultative examiner found no evidence of significant impairment in this area. (Tr. at 265.)

As to the fourth and final functional area, there is no evidence or argument that Plaintiff suffered episodes of decompensation. Since I suggest that Plaintiff cannot show even one, let alone two, functional limitations to satisfy the "B" criteria, I suggest that the ALJ properly found that Plaintiff did not meet any Listing. *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 711 (6th Cir. 2013) (where the plaintiff could prepare meals, do laundry, shop and pay bills, and occasionally spent time with others, daily activities and social functioning portions of the Listing were not met or equaled, and since the plaintiff was less than markedly limited as to concentration and had no episodes of decompensation, the plaintiff could not meet or equal Listing 12.04).

### b.   Treating Source

Plaintiff also argues that the ALJ "lacked substantial evidence to reject the opinion of Mario's psychologist, Wendy Hayek, M.A., L.L.P, from New Oakland Child-Adolescent and Family Center." (Doc. 12 at 23-25.)

### i.   Standards

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc.*

16

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Moreover, when the physician is a specialist with respect to the medical condition at issue, . . . her opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

Since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, the ALJ "will not give any special significance to the source of an opinion[, including treating sources], on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section[,]" i.e., whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, residual functional capacity, and application of vocational factors. 20 C.F.R. § 404.1527(d)(3). A "[d]octor's notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not required to accept the statement as true or to accept as true a physician's opinion based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011). "Otherwise, the hearing would be a useless exercise." *Id.*

"[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight . . . [but] 'is just one more piece of evidence for the administrative law judge to weigh . . . .'" *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (quoting *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006)). Once the treating source is placed on the same level as other medical opinions, the treating source opinion should not be subjected to "greater scrutiny" than the non-treating sources, especially when there are more

flagrant inconsistencies in the opinions of the non-treating sources. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013).

If the ALJ declines to give controlling weight to a treating source's opinion, then he must use the following factors to determine what weight the treating source opinion should be given: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. These factors may be applied to all medical opinions, not just treating sources. SSR 06-3p, 2006 WL 2329939, at *3 (2006). However, because of the special status of treating source opinions, where the ALJ "failed to conduct the balancing of factors to determine what weight should be accorded these treating source opinions . . . , [t]his alone constitutes error." *Cole v. Comm'r of Soc. Sec.,* 652 F.3d 653, 660 (6th Cir. 2011) (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)). But this error is not always dispositive and can be considered "harmless error" if: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole*, 661 F.3d at 940 (quoting *Wilson*, 378 F.3d at 547).

A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Acceptable medical sources" who can be considered treating sources include "licensed or certified psychologists." SSR 06-03p, 2006 WL 2329939, at *1-2 (2006). After treating sources, a "nontreating source, who physically

examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). "'The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole*, 2011 WL 2745792, at *4. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

ii.     **Analysis**

In the instant case, Ms. Hayek's letter does not contain any functional capacity findings but rather contains only the conclusory "recommend[ation] that [Plaintiff] not seek employment." (Tr. at 364.) I suggest that since this conclusion regards an issue that is "reserved to the

19

Commissioner[,]" the ALJ was not required to give the opinion any deference at all. 20 C.F.R. § 404.1527(d)(3).

I further note that Ms. Hayek's conclusory letter contained no citations to results of tests, observations, or other medical findings. Under these circumstances, even if the opinion was more than a conclusion as to disability, I suggest that the ALJ was free to discount the conclusions and committed no error in doing so. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) (holding that ALJ properly discounted doctor's opinions on a check-off form which "did not cite clinical test results, observations, or other objective findings as a basis for determining [the plaintiff's] capabilities"); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of checklist forms which cited no medical evidence and provided little or no elaboration).

I therefore suggest that this ground does not undermine the ALJ's findings.

### c.    RFC Analysis

Plaintiff contends that the ALJ mischaracterized Plaintiff's activities of daily living, which resulted in an erroneous finding that Plaintiff only had moderate restrictions in social functioning (Doc. 12 at 23), and that the ALJ's RFC assessment was not supported by substantial evidence. (*Id.* at 25-26.)

I suggest that there is no evidence that Plaintiff suffered restrictions in social functioning beyond moderate restrictions for the same reasons described under the "B" criteria analysis of the relevant Listings. As indicated above, the Psychiatric Review Technique found "mild" limitations and the Mental RFC assessment and the consultative examiner found no significant limitations in social functioning. (Tr. at 267, 297, 309.)

In addition to the reasons stated above, I further suggest that the ALJ's overall RFC analysis is supported by the remainder of the record evidence. Even when Plaintiff was in high school, the school psychologist noted that "[c]urrent test results indicate functioning with the Low Average range of measured ability, with indications of true ability within the Average range." (Tr. at 199-200.) The school social worker, Diane Courtney, indicated that Plaintiff "demonstrates the ability to build and maintain peer/adult relationships." (Tr. at 203.)

### d.   Sentence Six Remand

Plaintiff contends that the case should remanded under sentence six because he "submitted new and material evidence at the Appeals Council level from psychologist Leonard Swistak, Ph.D., dated July 7, 2011." (Doc. 12 at 18.)

Sentence six of 42 U.S.C. § 405(g) allows the district court to remand in light of additional evidence without making any substantive ruling as to the merits of the Commissioner's decision, but only if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). The Sixth Circuit has long recognized that a court may only remand disability benefits cases when a claimant carries his burden to show that "the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (citing *Foster*, 279 F.3d at 353). In addition, "such evidence is 'material' only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357.

"'Good cause' is shown for a sentence six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.'" *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2010) (finding evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

In the instant case, the medical evidence is dated July 7, 2011, so it is new in the sense that it was not in existence at the time of the hearing. However, I suggest that good cause has not been shown. Dr. Swistak is not a treating physician but rather was contacted to perform a "psychological evaluation" of Plaintiff. (Tr. at 368.) I therefore find that the new evidence has not arisen from further treatment but was generated merely for the purpose of attempting to prove disability and, thus, that good cause has not been shown. *See Payne, supra*.

To the extent that Plaintiff's current counsel considers prior counsel to have done poorly for not undertaking to seek further evaluations (Doc. 12 at 18-19), "there is absolutely no statutory or decisional authority for [the] . . . premise that the alleged incompetence of [the plaintiff's] first attorney constitutes 'good cause' in this context." *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002); *accord Leitz v. Comm'r of Soc. Sec.*, No. 11-cv-10203, 2012 WL 2003786, at *2 (E.D. Mich. 2012) ("Plaintiff's contention that his former attorney neglected to obtain the treatment records . . . does not sufficiently establish 'good cause.'"). Therefore, even if Plaintiff could establish that the evidence is material, good cause has not been shown. I therefore suggest that Plaintiff's request for remand under sentence six should be denied.

### 3.   Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
_____
CHARLES E. BINDER
Dated: January 30, 2014          United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 30, 2014          By____s/Patricia T. Morris_____
                                         Law Clerk to Magistrate Judge Binder