UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO JACKSON,

      Plaintiff,

v.

                                                          Case No. 12-15036

COMMISSIONER OF SOCIAL SECURITY,      Honorable Julian Abele Cook, Jr.

      Defendant.

## ORDER

This case involves a complaint by the Plaintiff, Mario Jackson, who, in relying upon the authority of 42 U.S.C. § 402(g), has asked this Court to review a final decision by the Defendant, Commissioner of the Social Security Administration ("Commissioner"). Now pending before the Court are the motions for summary judgment that the parties have filed pursuant to Federal Rule of Civil Procedure 56.

Both of these motions were referred to Magistrate Judge Charles E. Binder for his evaluation. On March 5, 2014, he filed a report, in which he recommended that the Court (1) grant the Commissioner's motion for summary judgment, and (2) deny Jackson's motion. Jackson has registered his objections to this report.

### I.

The Magistrate Judge included a detailed and thorough account of the factual history of this case in his report. Inasmuch as neither party has expressed an objection to the facts included therein, this Court will adopt them as described by him. Nevertheless, a summary of the relevant facts will

be supplied below.

In March 2009, Jackson filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he had been unable to work as of July 1, 2002. When these applications for DIB and SSI were rejected, Jackson sought and ultimately obtained a *de novo* hearing before an administrative law judge who, in a decision rendered on November 4, 2010, determined that he was not disabled within the meaning of the Social Security Act.

Jackson was approximately twenty-nine years old at the time of the administrative hearing. He had limited work experience as a janitor, machine operator, and truck assembly worker. (Tr. 231-36). However, he has been unable to sustain employment for more than a few months at a time because of various conflicts with his employers. Jackson has indicated that as a child he experienced substantial emotional problems, difficulties which he attributes to a tragedy that was witnessed by him at the age of four when his mother was shot and killed.

When Jackson was eighteen years old, he was determined to be eligible for special education services based on an assessment by Kenneth Bush, a school psychologist, who determined that (1) Jackson's full scale intelligence quotient was 82, which placed his general ability or effective level of functioning to be within the range of low average. (Tr. 198). His academic abilities tested significantly lower - in the borderline to moderately impaired range. The school social worker noted that he did not qualify as an emotionally impaired child for two reasons; namely, he (1) was able to build relationships with other children of comparable age, and (2) did not demonstrate any inappropriate behavior that could not be corrected or modified. (Tr. 203). However, on the minus side of this analysis, this school social worker also indicated that Jackson (1) was argumentative toward authority figures, and (2) became angry whenever his demands were not met. (Tr. 201-02).

On May 14, 2009, Jackson was examined by two psychologists, Julie Czarnecki, and Nick Boneff, both of whom noted that he (1) is capable of functioning in the "solidly borderline range" and (2) did not demonstrate an impairment that would interfere with his ability to perform simple routine manual tasks. (Tr. 267). They also failed to observe evidence that he suffered from psychiatric illness, depression or anxiety that would prevent him from acting appropriately in a social or work situation. *Id.* One month later, another psychologist, Kenneth Kobes who, after administering a RFC assessment to Jackson, concluded that, with medication, he had the ability to carry out simple instructions, was capable of completing simple tasks in a timely and appropriate manner, and could work under supervision. (Tr. 298). Kobes also subjected Jackson to a psychiatric review technique, which determined that he is moderately limited in maintaining concentration, persistence or pace, and mildly limited in his daily living activities and in maintaining social functioning. (Tr. 309).

In August 2009, Jackson was evaluated by the staff at the Macomb County Community Mental Health, where he was diagnosed as having a major depressive disorder, recurrent, moderate; post-traumatic stress disorder ("PTSD"); and attention deficit/hyperactivity disorder, hyperactive or combined. Between August 2009 and June 2010, Jackson was treated at the New Oakland Child Adolescent and Family Center by Wendy Hayek, who recommended in June 2010 that he not seek employment as a result of the severe symptomology demonstrated by him during the period of his treatment. (Tr. 364).

While testifying at the administrative hearing on October 7, 2010, Jackson attributed this somewhat disturbing post-traumatic stress disorder assessment to being a witness to the homicides of his mother and other family members. He noted that he lives with his aunt, who takes care of him.

3

He also asserted that his inability to control his anger causes him to snap at her for no reason. His aunt testified that the same problem resulted in his getting fired from his previous employment. She indicated that he suffers from mood swings and is not responsible enough to take care of himself. At the conclusion of this hearing, the administrative law judge concluded that, although Jackson suffered from several severe impairments, he did not have an impairment or a combination of impairments that met or equaled the "Listing of Impairments." It was also the conclusion of the administrative law judge that Jackson did possess the residual functional capacity to perform light, work with the restrictions that such work be limited to simple one or two-step tasks and would require him to have little or no contact with the general public. (Tr. 21).

After taking Jackson's limitations into consideration, the administrative law judge determined that although Jackson was unable to perform any of his past relevant work assignments, he was capable of performing a significant number of jobs that currently exist within the national economy. (Tr. 25-26). As a result, the administrative law judge concluded that Jackson was not suffering from a disability which would be compensable under the Social Security Act.

In July 2011, Jackson was evaluated by another psychologist, Leonard Swistak, who determined that Jackson's full scale intelligence quotient was only 61, which placed him in the category of being a "mildly impaired" person. This evaluation was presented to the Appeals Council as part of Jackson's request for a review of the administrative law judge's decision. Notwithstanding Swistak's assessment, the Appeals Council denied Jackson's request for relief on September 20, 2012. Thus, this rejection became the final decision of the Commissioner. This lawsuit followed.

II.

A district court conducts a de novo review of any objections to the report and

recommendation of a Magistrate Judge on a dispositive motion. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b)(3). The Court has the authority to review the Commissioner's final decisions to determine if (1) the findings are supported by substantial evidence, and (2) the correct legal standards were applied. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted), and is "more than a scintilla of evidence but less than a preponderance," *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence, even if such evidence could also support a different conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). This review is limited in scope to an examination of the record only. It is important to note that the reviewing court must not "review the evidence *de novo*, make credibility determinations [or] weigh the evidence." *Brainard*, 889 F.2d at 681.

### III.

In his appeal to this Court, Jackson has submitted the following erroneous conclusions by the magistrate judge in his report; namely, (1) failing to find a good cause for ordering a remand to consider the psychological evaluation by Leonard Swistak; (2) finding that Jackson's mental impairment did not meet and/or equal Listed Impairment § 12.02; (3) concurring with the administrative law judge's rejection of the treating physician's opinion; and (4) failing to address Jackson's arguments related to vocational issues. These objections will be addressed seriatim.

Jackson first contends that he is entitled to a remand pursuant to sentence six of 42 U.S.C. § 405(g) because he submitted new and material evidence to the Appeals Council in the form of a

5

report by Leonard Swistak on dated July 7, 2011. "Evidence submitted to the Appeals Council after the administrative law judge renders a decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). However, sentence six permits a court to remand for the consideration of new, material evidence if a claimant can show good cause for failing to present the evidence earlier. *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). Evidence is only considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (internal quotation marks and citations omitted). Evidence is material if "there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (internal quotation marks and citations omitted). Good cause is established "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the [administrative law judge]." *Id.* (internal quotation marks and citations omitted). The claimant bears the burden of proving that remand is appropriate. *Id.*

Here, Jackson has not demonstrated good cause. The magistrate judge noted that Swistak's report did not arise from further treatment of Jackson's condition. Rather, it was prepared for the purpose of demonstrating a disability in support of an application for benefits, which is not sufficient to demonstrate good cause. *Payne v. Comm'r of Soc. Sec.*, No. 1:09-cv-1159, 2011 WL 811422, at *12 (W.D. Mich. Feb. 11, 2011) (citing *Koulizos v. Sec'y of Health & Human Servs.*, No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug.19, 1986) (unpublished)).

Remand is also inappropriate because Jackson did not "give a valid reason for his failure to obtain [the] evidence prior to the hearing." *Oliver v. Sec. Health & Humans Servs.*, 804 F.2d 964,

6

966 (6th Cir. 1986). The mere fact that the report was prepared after the administrative law judge rendered his decision is not a sufficient reason. *Id.* (citing *Willis v. Sec. Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). Here, Jackson asserts that this report documents the continuing decline in his mental functioning since he was approximately 18 years old. However, he has not established any reason why this evidence could not have been presented to the administrative law judge. Indeed, he acknowledges that Swistak's report is consistent with earlier reports of auditory hallucinations by Jackson, with the only exception being that it is "more thorough and fleshed out." Pl. Mot. Summary Judgment 12, ECF No. 12. Inasmuch as Jackson has not proffered a valid reason for his failure to present this evidence during the administrative hearing, he has failed to establish good cause for a sentence six remand.

Jackson next contends that the administrative law judge's decision that his mental impairment does not meet or equal the listed impairment § 12.02 was not supported by substantial evidence. The administrative law judge concluded that Jackson's impairment failed to satisfy the "B criteria."

In order to satisfy the "B" criteria, Jackson's impairment must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, sbpt. P, app.1, § 12.02. The administrative law judge, after reviewing the record, determined that Jackson suffered from (1) mild restriction of activities of daily living; (2) moderate difficulties in maintaining social function; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. An administrative law judge's decision must be affirmed if his findings

are supported by substantial evidence, even if that evidence could support a contrary decision. *Her v. Comm'r of Soc. Sec.*, 203 F.3d at 389-90.

Jackson contends that the administrative law judge erred in finding that Jackson had "mild" restrictions in his activities of daily living. In support of his position, he refers to Swistak's report and testimony from Jackson's aunt. Swistak's report was not presented to the administrative law judge and, thus, it cannot be considered as a part of the substantial evidence review by this Court. *Foster*, 279 F.3d at 357. Although the testimony from Jackson's aunt could, arguably, support a different administrative conclusion, the Court cannot find - and does not find - that the administrative law judge's decision was not supported by substantial evidence. As noted in the magistrate judge's report, Jackson's own activity report indicated that he was able to prepare food, perform household chores, utilize public transportation services, operate a motor vehicle, go to stores, play sports, visit friends, and play chess. R&R 14-15, ECF No. 17 (citing *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009)). Moreover, the Psychiatric Review Technique that was conducted on June 16, 2009 only supported a finding of a mild limitation in the activities of daily living.

Similarly, Jackson contends that the administrative law judge lacked substantial evidence upon which to determine that he had only "moderate" limitations in social functioning. Again, the Court must disagree. The Function Report submitted by Jackson's aunt only noted that Jackson (1) had personality differences with his uncle, and (2) has emotional problems with his friends in those limited instances when they talk about his mother. (Tr. 228). Jackson, on the other hand, proclaimed that he saw his social friends on a regular basis. Multiple psychiatric evaluations also determined that Jackson did not suffer from even moderate limitations in social functioning. (Tr. 267, 297, 309).

8

Jackson next submits that the administrative law judge did not give the proper weight to the opinion of his treating physician, Wendy Hayek. The administrative regulations implementing the Social Security Act impose certain standards on the weight to be given to medical source evidence. Under the "treating physician rule," opinions of treating doctors are given greater deference than those opinions rendered by non-treating doctors. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The rationale underlying this rule is that "treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone.'" *Id.* (citing 20 C.F.R. § 416.927(d)(2)). As such, "treating physicians' opinions must be given controlling weight if (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also* 20 C.F.R. § 404.1527(c)(2).

If the administrative law judge opts to discount the opinion of the treating physician, he must provide "good reasons" for doing so. 20 C.F.R. § 404.927(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). An administrative law judge's failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the [administrative law judge] may be justified based upon the record." *Rogers,* 486 F.3d at 243.

Where, as here, the treating physician's opinion is not afforded controlling weight, it is "still

9

entitled to deference" and must be weighed using the factors set forth under 20 C.F.R. § 404.1527(d), namely: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart* 192 F. App'x. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). An administrative judge commits error if he fails to balance these factors when weighing the opinion of a treating source. *Cole v. Comm'r of Soc. Sec.*, 652 F.3d 653, 660 (6th Cir. 2011). However, such error may be considered harmless if "(1) the treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Id.* at 661.

Here, the administrative law judge gave little weight to the opinion of Jackson's treating psychologist, Wendy Hayek. After reviewing her December 2009 mental health form, the administrative law judge explained that "[t]he treatment notes fail to note or discuss severe symptoms or limitations," and he noted that Hayek considered Jackson's mental impairments "not applicable" to his daily functioning. (Tr. 23).

On June 17, 2010, Hayek wrote a letter stating that "[d]ue to the severe symptomology during treatment and due to the unstable mood he was exhibiting it was strongly recommended that he did not enter the workforce due to his unstable mood. At this time it is further recommended that

he not seek employment." (Tr. 364). The administrative law judge noted that her recommendation was based on the "severe symptomology" that Jackson exhibited during treatment, but found this recommendation incongruent with her treatment notes - which failed to discuss severe symptoms or limitations - and Jackson's initial evaluation. (Tr. 24). In fact, he found her statement "wholly unsupported" by findings in her treatment notes. *Id.* Although Hayek's treatment notes do indicate that Jackson complained of anger, paranoia, and hearing voices, the administrative law judge determined that the severity of Jackson's complaints were in general not credible. (Tr. 22).

The administrative law judge did not lack substantial evidence in giving little weight to Hayek's opinion. Her opinion that he should not seek employment is a finding that is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(3). The administrative law judge also determined that the opinion was not supported by her treatment notes, which describe Jackson's medications and his complaints but do not offer medical tests performed or the severity of any observed symptoms. (Tr. 24). The administrative law judge also concluded that Hayek's opinion was contradicted by the weight of the record, particularly examinations conducted by consultative physicians whose opinions were well-supported by their notes. *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 696-97 (6th Cir. 2007) ("Commissioner may reject conclusory treating-physician opinions in favor of consulting-physician opinions that are supported by substantial evidence."); *Maple v. Apfel*, 14 F. App'x 525, 536 (6th Cir. 2001) (treating physician's statement was "not well-supported by acceptable medical evidence and [was] found to be contradicted by other evidence and inconsistent with the evidence as a whole").

Finally, Jackson contends that the administrative law judge did not incorporate all of his nonexertional impairments in his hypothetical question to the vocational expert. First, he asserts that

the hypothetical question did not take into account his problems with getting along with others. However, the administrative law judge did not find Jackson entirely credible with respect to these social limitations. While he noted that Jackson claimed significant social problems, he also observed that Jackson socializes with friends and family members. It is also apparent that the administrative law judge did take these concerns into account by including in the hypothetical the limitation that the job must have very little, if any, public contact. The administrative law judge required that although there could be incidental contact with supervisors and other workers, the employee would "basically [be] working in isolation." (Tr. 46-47).

Jackson also objects that the hypothetical did not include the limitation that he has moderate difficulties with regard to concentration, persistence, or pace. This argument is deemed waived in that Jackson failed to present it in his motion for summary judgment. The Sixth Circuit has consistently held that a litigant is not permitted to raise a new argument or theory for the first time in his objections to a report and recommendation. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

IV.

For the reasons that have been outlined above, the Court will adopt the magistrate judge's report, including his recommendation, and grant the Commissioner's motion for summary judgment (ECF No. 15), deny Jackson's motion for summary judgment (ECF No. 12), and affirm the decision of the Commissioner.

IT IS SO ORDERED.

Date: March 31, 2014                                  s/Julian Abele Cook, Jr.
                                                      JULIAN ABELE COOK, JR.
                                                      U.S. District Judge


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014

                                                      s/ Kay Doaks
                                                      Case Manager